IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE TALARIA COMPANY, LLC, d/b/a THE HINCKLEY COMPANY and HINCKLEY YACHT SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>M/V SEA BISCUIT (O.N. 590706), Her Engines, Machinery, Tackle, Apparel, Appurtenances, etc., *in rem*,<br><br>Defendant. | CIVIL ACTION NO. 07-213S<br>IN ADMIRALTY |

**PLAINTIFF'S RULE 16 STATEMENT**

NOW COMES plaintiff, The Talaria Company, LLC, doing business as The Hinckley Company and Hinckley Yacht Services (collectively referred to as "Hinckley"), and by its attorney, hereby submits this Rule 16 Statement in contemplation of a pretrial conference before This Honorable Court on Wednesday, September 5, 2007.

I. Summary of the Case

Hinckley is engaged, among other things, in furnishing repairs, services and supplies to vessels of various kinds and descriptions. On or about September 27, 2005, the claimant, William Patton Cassidy, Jr., delivered the yacht SEA BISCUIT (O.N. 590706) (hereinafter referred to as "Vessel") to Hinckley's facility in Portsmouth, Rhode Island. Mr. Cassidy entered into an oral agreement with Hinckley whereby plaintiff agreed to perform certain work and furnish certain labor, materials and services to the

Vessel. Pursuant to that agreement, Hinckley performed work in the nature of repairs to the yacht, and furnished certain materials, supplies and related services to the Vessel.

Hinckley submitted interim invoices to Mr. Cassidy. Although Mr. Cassidy paid an initial deposit of $50,000.00 on September 27, 2005, and a subsequent payment of $200,000.00 on January 23, 2006, he has refused to pay the balance of Hinckley's current invoices which now total $277,189.45.

Plaintiff filed this admiralty action against the Vessel to enforce its maritime lien for "necessaries" pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343 (hereinafter referred to as "CIMLA"). Plaintiff invoked the maritime procedures and special relief provided in Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter referred to as "Supplemental Rules") for the arrest of the Vessel.

In his Answer (Document 15), Mr. Cassidy admits that the Vessel was delivered to Hinckley's facility and that plaintiff was to perform certain work and furnish certain labor, materials and services to the Vessel. *Answer, para. 5.* By way of affirmative defense, Mr. Cassidy alleges, in part, that Hinckley misrepresented the scope and cost of the repairs to be made to the Vessel. *Answer, First Defense.*

II. Elements of Proof – Substantive Law

The general maritime law recognizes and enforces an oral contract. *American Dredging Co. v. Miller*, 510 U.S. 443, 451 (1994). A contract to repair a vessel is maritime in nature and invokes admiralty jurisdiction giving rise to a maritime lien. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961); *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99 (1922). To form a binding contract, the parties must agree upon

the material terms of the contract and clearly express their intention to be bound by those terms. *May Ship Repair Contracting Corp. v. Barge Columbia New York*, 160 F. Supp.2d 594, 597 (S.D.N.Y. 2001) (citation omitted).

Hinckley brought this action *in rem* under Rule C(1) of the Supplemental Rules to enforce its maritime lien. Hinckley asserts such a lien against the Vessel under CIMLA on the basis that plaintiff provided "necessaries" to the yacht. In order to establish a maritime lien under the statute, Hinckley must show that it furnished repairs, supplies or other necessaries to the Vessel upon the order of the owner or a person authorized by the owner. *GMD Shipyard Corp. v. M/V Anthea Y*, 2004 WL 2251670 (S.D.N.Y. 2004) (citation omitted). Pursuant to the statute, the owner, the master or a person entrusted with the management of the vessel has the authority to procure necessaries that will subject the vessel to a maritime lien. 46 U.S.C. §31341(a). The term "necessaries" includes "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. §31301(4).

In the event that Hinckley fails to prove the existence of a valid oral agreement, a quasi-contractual claim under the equitable theory of *quantum meruit* may be considered in admiralty if it arises out of a maritime contract. *GMD Shipyard Corp. v. M/V Anthea Y*, 2004 WL 2251670 (S.D.N.Y. 2004) (citation omitted). Such a claim will be governed by state law. *Id.* (citations omitted). In order to establish a cause of action in *quantum meruit* in Rhode Island, Hinckley must show that Mr. Cassidy has derived some benefit from the services and would be unjustly enriched without making compensation therefor. *National Chain Co. v. Campbell*, 487 A.2d 132, 135 (R.I. 1985).

Dated: August 31, 2007

Respectfully submitted,

THE TALARIA COMPANY, LLC,
By its attorney,
NORMAN A. PELOQUIN, II, P.C.

/s/ Norman A. Peloquin, II

Norman A. Peloquin, II, Esquire
(RI Bar No. 4146)
16 Main Road, P.O. Box 65
Adamsville, RI 02801
Tel. (401) 635.9100
Fax (401) 635.0101
E-mail: peloquin@sealaw.net

Certificate of Service

I hereby certify on this 31st day of August, 2007, that a true and correct copy of the foregoing document was served upon the following counsel of record by electronic means: James T. Murphy and Kelly N. Michels, Hanson Curran LLP, 146 Westminster Street, Providence, Rhode Island 02903.

/s/ Norman A. Peloquin, II
Norman A. Peloquin, II, Esquire