JTM:ems 07-210 4/07/08

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE TALARIA COMPANY, LLC<br>d/b/a THE HINCKLEY COMPANY<br>and HINCKLEY YACHT SERVICES,<br>*Plaintiff*<br><br>V.<br><br>M/V SEA BISCUIT (O.N. 590706), Her<br>Engines, Machinery, Tackle, Apparel,<br>Appurtenances, etc., *in rem*,<br>*Defendant* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 07-213 S<br>IN ADMIRALTY |

**DEFENDANT'S PRE-TRIAL MEMORANDUM**

Now comes defendant, M/V SEA BISCUIT, through her owner, and files her pre-trial memorandum in this admiralty case.

The central issue in this case is how long should it take and how much should it reasonably cost to refit a sports fisherman yacht such as M/V SEA BISCUIT? The central factual allegations, as set forth in the plaintiff's complaint, are set forth in paragraphs 5, 6, 7 and 8 of the pleading:

> 5. On or about September 27, 2005, Owner delivered the Vessel to Hinckley's facility and entered into an agreement with Hinckley whereby plaintiff agreed to perform certain work and furnish certain labor, materials and services to the Vessel and Owner agreed to pay Hinckley for its services.
>
> 6. Pursuant to said agreement, and upon the order of the Owner of the aforesaid vessel, Hinckley did perform work in the nature of repairs to said yacht, and did furnish certain materials,

> supplies and related services to the Vessel, all of which were necessary to maintain the Vessel in a seaworthy condition.
>
> 7. From time to time, Hinckley submitted invoices to Owner for work done, materials supplied, and services rendered, all of which represented charges that were fair and reasonable.
>
> 8. Although Owner has paid a portion of the charges for the work performed, to wit, $250,000 [plaintiff later acknowledged that the Owner paid $300,000], he has failed, neglected and refused to pay for the balance of Hinckley's invoices which are now due and owing to plaintiff in the amount of $277,189.45 [which should be reduced by the acknowledged receipt of an additional $50,000 before suit, to a figure of $227,189.45].

In its complaint, the Talaria Company, LLC, d/b/a the Hinckley Company and Hinckley Yacht Services asserts one cause of action. It seeks enforcement of an asserted maritime lien.

M/V SEA BISCUIT, through her owner, asserts a number of defenses in its answer. The defendant admits that the vessel was delivered to Hinckley's facility and that Hinckley was to perform certain work and to furnish certain labor, materials and services to the vessel. The defendant also asserts that it remitted payments in the amount of at least $300,000 to Hinckley, and was and is committed to paying a fair and reasonable amount for the timely completion of the work on M/V SEA BISCUIT. However, defendant asserts that Hinckley mismanaged the work, including preparing accurate and timely estimates and completing the work in a timely and efficient manner. Defendant asserts that Hinckley is wrongfully trying to tax the owner with the expense resulting from Hinckley's own mismanagement and inefficiency.

Among its affirmative defenses, defendant asserts that the action is barred by virtue of fraud, in that plaintiff knowingly misrepresented to the owner the scope and/or cost of the repairs to be made to M/V SEA BISCUIT, intending the owner to rely on its representations, which the owner did. That reliance is evidenced, in part, by the owner's delivering the vessel into the

custody of Hinckley and remitting at least $300,000 to Hinckley to date, allowing it to commence work on the vessel, which has not yet been completed, thereby depriving owner of the vessel and, effectively, holding the vessel for ransom.

The second defense is that the plaintiff is not entitled to a lien against the vessel for services or supplies that were not provided to the vessel and/or did not constitute necessaries to the vessel. Substantial portions of the materials put into the vessel, such as tanks, and other equipment, were purchased and paid for by the owner for installation into the vessel as part of the work contracted with Hinckley. To the extent there is an equitable aspect to the plaintiff's claim for a maritime lien, the plaintiff has shown unclean hands and is therefore not entitled to an equitable remedy.

Essentially, this case is a contract case. It is the plaintiff that breached the contract by failure to efficiently and timely complete the work for a reasonable sum. After paying $300,000 and having a vessel that is nowhere near completion, the owner understandably balked at paying more until a satisfactory arrangement and guarantee of proper completion was made by Hinckley. In other words, Hinckley's own failure of consideration by non-performance and delay in failing to complete the vessel within a reasonable time and at a reasonable cost bars the claim.

## A. Defendant's Witnesses and Proof

A.) William Cassidy, owner of the vessel, M/V SEA BISCUIT. He will testify about his purchase of the vessel; its condition when purchased; the work he wished to have done to refit and refurbish the vessel; and the arrangements he made and attempted to make with plaintiff, Hinckley, to have that work performed. He will testify about his initial meetings and agreements with Hinckley and its personnel, including Joseph Kiley, James Kerr, Dan Shea and

other personnel at Hinckley. He will also testify concerning his discussions with Anthony Knowles, a marine surveyor, with respect to the vessel. He also will testify concerning his discussions with the Naval architect, Matt Smith, who prepared drawings for the proposed work and was familiar with the work as it was to progress, and with respect to his communications with Cassidy about the same. Mr. Cassidy will testify about representations made to him by Hinckley concerning the work, how it would be billed, the estimated charges, and progress of the work. He also will testify about certain items that were to be installed on the vessel, such as a tower and tanks, that he was paying for. He will testify with respect to the payments that he made to Hinckley, in several installments totaling $300,000, and why and when they were paid. He will also testify concerning meetings with Hinckley staff with respect to further payments and resolution of problems encountered with respect to the timeliness of the work and the charges that were being made. He will also testify concerning his observations of the work as it progressed, or did not progress, and that he was concerned that after $300,000 had been paid, he was being assessed total bills of approximately $600,000, or so, for a vessel that had been taken apart and had not yet been put back together to anywhere near a state of completion. He also testified concerning his concerns about the invoices, estimates and other documents presented to him by Hinckley.

B.) Gary Winn, Nantucket, Massachusetts. He will testify with respect to his observations and conversations that he heard and participated in with personnel at the Hinckley facility with respect to the M/V SEA BISCUIT. He will testify concerning his observations of the failure to proceed with the work in an organized, efficient and timely manner.

C.) Captain Doug Lindley, Nantucket, Massachusetts. He will testify concerning his role as the Captain of the M/V SEA BISCUIT and familiarity with sports fishing vessels such as

the M/V SEA BISCUIT, the type of work that was required to refit and refurbish it, and the progress or lack of progress in efficiently and timely completing the work required. He is familiar with the M/V SEA BISCUIT in its condition before and during its time at the Hinckley yard.

D.) Matthew Smith, Naval architect, Barrington, Rhode Island. He may be called as a plaintiff's witness. If not, he will be called as a defense witness to testify concerning his role as the Naval architect for the work to be done on M/V SEA BISCUIT. He will testify concerning the drawings that he prepared and his discussions with the owner, William Cassidy, with personnel at Hinckley, and with the surveyor, Mr. Knowles. He will testify concerning the charges that were made, and the manner in which they were made as work progressed on a "system by system by system" basis. He will testify on the timeliness, accuracy and completeness (or lack thereof) of certain communications between the yard and the owner.

E.) Defendant understands from plaintiff's Rule 26 disclosures, that plaintiff probably will call Mr. James Kerr, Operations Manager for Hinckley Yacht Services; Mr. Dan Shea, Service Manager for Hinckley Yacht Services; Mr. Joseph Kiley, Service Manager for Hinckley Yacht Services; Mr. Anthony Knowles, marine surveyor, and perhaps Mr. Matthew Smith, Naval architect. One or more of the aforementioned defense witnesses may testify in rebuttal to testimony by these plaintiff's witnesses.

F.) Defendant anticipates calling, for rebuttal purposes, the following workmen listed in plaintiff's documentation (employee time sheets) with respect to work assertedly done on the vessel: Louis Cipriano, Partner No. 65; Roy Lopes, Partner No. 68; Peter Goodrich, Partner No. 188; Mike Gibney, Partner No. 8042; Bill Kenyon, Partner No. 8172; and, Nick Crevier, Partner No. 8168. Also, for rebuttal purposes, defendant may call Chris Manghan, of Hinckley Marine

Services, as referenced in the Matthew Smith e-mail of December 2005 to William Cassidy, Chris Manghan and Gerald Kiley. Also, defendant may call for rebuttal purposes the following individuals who were present at a meeting amongst Joseph Kiley, Matthew Smith and William Cassidy on January 19, 2007, concerning problems with the progress of the work and approvals of additional work to be done, etc: David R. Frank; Lewis T. Wales; David Mullen; Roy Lopes; and, Mark Preston, who are identified in Matthew Smith's three page e-mail with respect to the meeting of January 19, 2007 and who are also mentioned in other e-mails with respect to the vessel.

Through the witnesses, including Mr. Cassidy, defendants will show that the "contract" document presented by Hinckley (HYS0001-0002) is an undated, unsigned dockage/storage agreement and not an agreement to provide refit services of any description, with any agreement with respect to re-delivery date, or any agreement on the estimated cost. Accordingly, defendant asserts that plaintiff must prove that it acted reasonably, and defendant will prove that it did not act reasonably or efficiently or in a timely manner in completing the work or charging therefore. Further, the document that plaintiff purports to be the "contract" and the terms and conditions which may include language with respect to maritime liens are inapplicable and unenforceable to defendant and the vessel under the circumstances in this case. This is particularly true as there is no copy of the document signed by the party to be charged.

**B. Supporting Law**

Defendant will prove that on September 27, 2005, Hinckley received a $50,000 deposit by Mr. Cassidy to be used toward the refit of M/V SEA BISCUIT, a 43-foot Rybovich Sport Fisherman. Defendant also will establish that on or about January 23, 2006 Hinckley received

another $200,000 check from Mr. Cassidy (Southern Realty Trust) for the refit of M/V SEA BISCUIT. Defendant also will establish that on or about December 27, 2006, defendant paid another $50,000 to Hinckley's on its account.

Plaintiff, Hinckley, is claiming a maritime lien on M/V SEA BISCUIT. It asserts it provided necessaries at the direction of the vessel's owner, William Cassidy. Maritime liens are governed by the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§31341-31343.

To establish a maritime lien on a vessel in an *in rem* action, such as the case at bar the plaintiff must prove:

(1) It *provided* necessaries,

(2) at a *reasonable price*,

(3) to the vessel

(4) at the direction of the vessel's owner or agent.

*Sweet Pea Marine, Ltd. v. APJ Marine, Inc. v. M/V Sweet Pea*, 411 F.3d 1242, 1249, 2005 AMC 1842 (11th Cir., 2005). Necessaries are those things that allow a vessel to perform its ordinary function. *Mullane v. Chambers*, 438 F.3d 132, 137 (1st Cir. 2006).

Because maritime liens "encumber commerce," *Peoples Ferry Co. v. Beers*, 61 U.S. 393, 401 (1857) they are "disfavored in the law" and therefore construed *stricti juris*" by the courts. *Container Applications Int'l, Inc. v. Lykes Bros., S.S. Co.*, 233 F.3d 1361, 1366 (11th Cir. 2000). "Consequently, where a litigant has failed to satisfy the requisite evidentiary burden, a lien should not be imposed." *Sweet Pea Marine, Ltd., supra* at 1252.

At issue in this case, principally, are: (1) the extent to which Hinckley actually *provided* necessaries to M/V SEA BISCUIT, given the lengthy delays in a far from completed refit; and, (2) whether the amount claimed by Hinckley is a "reasonable price" for what it has furnished.

In the maritime context, the "reasonableness" of charges, under a given set of circumstances:

> is measured by whether they are "customary" *Ex Parte Easton,* 95 U.S. 68, 77, 24 L.Ed. 373 (1877), and "in accord with prevailing charges for the work done and the materials furnished," *Shelly Tractor and Equip. Co. v. The Boots*, 140 F.Supp. 425, 426 (E.D. N.C. 1956).

*Sweet Pea Marine, Ltd.,* 411 F.3d at 1249.

The burden is on the plaintiff to satisfy its evidentiary responsibility on this element. *Id.* Hinckley must produce "evidence which compares the charges claimed with what other competitors would have charged for similar work or materials." *Id.* The test that Hinckley must satisfy is whether the charges that it seeks to impose on M/V SEA BISCUIT "were reasonably in accord with industry standards." *Id.* If it fails in sustaining this burden, the law "dictates that a plaintiff cannot prevail on its maritime claim." *Id.*

In its verified complaint, Hinckley asserts that it is engaged in "furnishing repairs, services and supplies to vessels of various kinds and descriptions." It also asserts that it performed repairs, refitting and the supplying of "necessaries" to M/V SEA BISCUIT. As a custom-built Rybovich 43 foot sports fishing vessel built of mahogany and fiberglass at Rybovich Boat Works in West Palm Beach, Florida in 1978, its design includes a raised deck house and fly bridge with two staterooms and one head. The superstructure included a tuna tower and buggy top and other equipment. When purchased by Mr. Cassidy, the vessel had two Cummins diesel inboard engines, a generator, a host of electronics equipment and a complicated electrical system. The scope of the project, the nature of the work that was to be done, what was done and what was not done, as well as the reasonable cost therefore, are matters that are beyond the knowledge of lay persons. It is a matter for expert testimony that persons with sufficient

technical or other specialized knowledge to assist the trier of fact in understanding the evidence, and the credibility of the testimony and documents presented to the Court. It is governed by Rule 702 of the Rules of the Federal Rules of Evidence.

To date no expert witness has been identified by plaintiff, nor has any expert report been presented in accordance with Rule 26(a)(2). Absent a disclosed expert witness and expert report, plaintiff should be precluded from presenting expert testimony and opinions with respect to the principal damage issues in this case, to wit, the extent to which necessaries were "provided" and whether they were provided at a "reasonable price." *See Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 27 (1st Cir. 2006); *Pena-Crespo v. Puerto Rico*, 408 F.3rd 10, 13 (1st Cir. 2005).

**C. List of exhibits intended to be offered at trial by defendant.**

Exhibit A: Receipt dated 9/27/05 by Joseph F. Kiley, Service Manager, Hinckley Yacht Services, acknowledging receipt of $50,000 deposit from "Bill Cassidy, owner of the 43 Rybovich (Sea Biscuit). Deposit to be used toward the refit of Sea Biscuit." This documents the first payment by defendant of $50,000 to plaintiff.

Exhibit B: Copy of check in the amount of $200,000 from Southern Realty Trust ("memo – Sea Biscuit") dated January 23, 2006. This is the second payment by defendant to plaintiff for the refit work that Hinckley's was to be performing.

Exhibit C: Check in the amount of $50,000 payable to Hinckley's from Southern Realty Trust ("memo – Biscuit") dated 12/27/06. This is the third payment by Defendant to plaintiff for refit work to be performed by Hinckley's, establishing that $300,000 has already been paid by defendant for the work that was not yet completed.

Exhibit D: CD-ROM containing PDF photographs (27 in number) taken by plaintiff's counsel in the presence of defense counsel in October, 2007, showing the incomplete status of the refit of M/V SEA BISCUIT.

Exhibit E: Copy of e-mail from Matthew Smith to William Cassidy concerning Hinckley Yacht Services estimates stating "here are all of the original estimates that were sent to me." E-mail is dated November 16, 2007 and

contains 15 attachments. Each exhibit will be listed as a separate sub-exhibit:

E-1: Seabiscuit re-berth estimate;

E-2: Soundown Corporation "to the Hinckley Company concerning stanchion isolator for Rybovich 43;

E-3: Hinckley "electrical department estimation report";

E-4: Hinckley "electronics department estimation report";

E-5: Hinckley "M.E. department estimation report" regarding engines;

E-6: Hinckley "M.E. department estimation report" regarding generator;

E-7: Milton-Cat Power Systems Division "engine package" pricing information report;

E-8: Hinckley "department estimation report" concerning fuel tanks;

E-9: J & J Marine Fabricating, Inc. estimate to Joe Kiley of Hinckley concerning "43 Rybovich tuna tower";

E-10: Hinckley "department estimation report" concerning "electrical" and grounding/bonding system and wiring;

E-11: Hinckley "department estimation report" concerning deck beams/through-hull openings/window moldings;

E-12: Hinckley "department estimation report" regarding coming boards/deck beams/aft bulkhead;

E-13: Hinckley "department estimation report" concerning electrical work and wiring for engines and generator and distribution panel;

E-14: Hinckley "department estimation report" concerning modifying the fly bridge and fabricating a day head and related and similar work;

E-15: Hinckley "department estimation report" concerning the salon interior, windows, overhead, countertops and sole;

<u>Exhibit F</u>: E-mail from Matthew Smith to William Cassidy of November 16, 2007 with subjects: "Sea Biscuit drawings", stating: "Here are all of the drawings that I created for Sea Biscuit. I will send the estimates that I

have from Hinckley as a separate e-mail." 17 PDF documents are attached to the e-mail which are listed as sub-exhibits as follows:

F-1: Starboard tank drawings;
F-2: Air intake drawings;
F-3: Engine room drawings;
F-4: Engine room hatch;
F-5: Forward profile drawing;
F-6: Port tank;
F-7: Interior arrangement;
F-8: Bulk heads;
F-9: Cockpit;
F-10: Day head;
F-11: Galley;
F-12: Head;
F-13: Helm;
F-14: Helm – panel;
F-15: Ice box;
F-16: Marble head;
F-17: Marble head section.
F-18: Shafting;
F-19: Tank sections.

Exhibit G: Unsigned, undated Hinckley Yacht Services "contract" form service request order No. 531488, two pages including "terms of contract" fine print on reverse.

Exhibit H: Check in the amount of $150,000 to Hinckley's from Southern Realty Trust ("memo – Biscuit") dated March 7, 2007 with stop payment order placed thereon by Cassidy following breakdown in discussions about getting the work completed in a timely manner for a reasonable price.

Exhibit I: E-mail from Matthew Smith to William Cassidy of May 22, 2006, subject "Sea Biscuit progress" advising Mr. Cassidy that "I am not happy with the progress that Hinckley is making on Sea Biscuit . . ."

Exhibit J: Three-page e-mail from Matthew Smith to Joseph Kiley; Christopher Manghan; David R. Frank; Louis P. Wales; David Mullen; Roy Lopes; Mark Preston, copy to Mr. Cassidy dated January 19, 2007, concerning their meeting of Friday, January 19, 2007.

The bulk of the documentation with respect to this case is in the hands of Hinckley and, given their document disclosures to date, defendant anticipates that plaintiff will be introducing

them into evidence. Defendant reserves the right and opportunity to use Hinckley exhibits and documents produced by Hinckley for rebuttal purposes and cross-examination of plaintiff witnesses at trial.

**D. Anticipated motions in limine:** None.

**E. This case is not being tried before a jury.**

**F. Probable length of trial:** Three to four days.

**G. Additional matters that may aid the Court in the disposition and/or trial of the action:**

The parties plaintiff and defendant have met on three separate occasions with the United States Magistrate Judge Robert Lovegreen in efforts to resolve this matter. Discussions amongst the parties are ongoing.

Respectfully submitted,

Defendant, M/V SEA BISCUIT
By its Attorneys,

/s/ James T. Murphy
James T. Murphy, Esq. (#1698)
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903-2202
(401) 421-2154 – telephone
(401) 521-7040 – fax

**PROOF OF SERVICE**

I hereby certify that on April 7, 2008, a true copy of the foregoing document was served upon each attorney of record listed below by electronic filing of this document with the United States District Court for the District of Rhode Island:

Norman A. Peloquin, II, Esq. nap@psh.com

/s/ James T. Murphy
of Hanson Curran LLP